UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:22-CV-13-TBR

**KYLE HOPKINS,**                                                                                                       **PLAINTIFF**

**v.**

**BUNZL RETAIL SERVICES, LLC,**                                                                          **DEFENDANT**

### MEMORANDUM OPINION & ORDER

This matter is before the Court on Defendant Bunzl Retail Services, LLC's Motion to Dismiss, [DN 5]. Plaintiff Kyle Hopkins has responded, [DN 8], and Defendant has replied, [DN 9]. This matter is therefore fully briefed and ripe for review. For the reasons set forth herein, the Court will grant Defendant's Motion to Dismiss, [DN 5].

    **I.**    **BACKGROUND**

In July 2020, Plaintiff began working for Defendant Bunzl Retail Services, LLC, which operates a warehouse distribution facility in Murray, Kentucky. [DN 1, ¶¶ 7, 8]. As a Packer at Defendant's facility, Plaintiff obtained order tickets, scanned bar codes, packed items into boxes, and keyed order information into a computer system. *Id.* ¶ 8. Plaintiff claims that he met his production quotas throughout his employment with Defendant. *Id.* ¶ 10.

According to the allegations in the Complaint, a bisexual male coworker touched Plaintiff in a suggestive manner sometime in March 2021. *Id.* ¶ 11. Plaintiff reported the incident to his "Lead employee." *Id.* ¶ 12. He also discussed the incident with the warehouse manager. *Id.* The manager stated that he would speak with the other employee, but Plaintiff responded that "he

1

doubted merely talking to the employee would accomplish anything based on the employee's typical behavior." *Id.* ¶ 13. The manager told Plaintiff that he could be fired for questioning the manager's method of addressing the situation. *Id.* ¶ 14. A few days after that conversation, a Human Resources agent called Plaintiff. *Id.* ¶ 15. The Human Resources agent told Plaintiff that the company had concerns about Plaintiff's performance; however, the agent could not identify any issues with Plaintiff's production numbers or his performance. *Id.* ¶ 16. Plaintiff alleges that the Human Resources agent then "said the concern actually related to [Plaintiff's] 'behavior,' stating that unspecified individuals had complained about him." *Id.* ¶ 17. Plaintiff requested more information, but the Human Resources agent stated that he could not divulge the names of the complainants or any further details about the complaints. *Id.* ¶ 18. Plaintiff was then placed on suspension. *Id.* ¶ 19.

During Plaintiff's suspension, the Human Resources agent told Plaintiff that he needed to contact Defendant's Employee Assistance Plan "because the company believed he was mentally unwell and needed help, even though [Plaintiff] had not had any disciplinary or other problems during his employment." *Id.* ¶ 20. Plaintiff acknowledges that he "suffered from mental health issues in the past," but he states in his Complaint that he did not have any mental health issues during his employment with Defendant. *Id.* ¶ 9. Nevertheless, Plaintiff completed the paperwork for the Employee Assistance Plan "in order to maintain his job." *Id.* ¶ 21.

However, before being scheduled for any services through the Employee Assistance Program, Plaintiff was terminated. *Id.* ¶ 21. He claims that, on or about March 19, 2021, the warehouse manager called and said that Plaintiff was being terminated based on complaints received from two of his female coworkers. *Id.* ¶ 22. The warehouse manager explained that these complaints had been received while Plaintiff was suspended. *Id.*

Plaintiff initiated this suit on January 24, 2022, alleging the following causes of action against Defendant: disability discrimination in violation of the Americans with Disabilities Act ("ADA") (Count I); retaliation in violation of the ADA (Count II); and disability discrimination in violation of the Kentucky Civil Rights Act ("KCRA") (Count III). *Id.* at 4–6. He seeks damages for lost compensation, front pay, punitive damages, and other compensatory damages (i.e., for emotional distress, pain and suffering, embarrassment, and humiliation). *Id.* at 7.

In response, Defendant filed the present Motion to Dismiss, [DN 5]. Defendant argues that Plaintiff's disability discrimination claims fail as a matter of law because Plaintiff has not sufficiently alleged that he is a qualified individual with a disability and regardless, the facts alleged in his Complaint do not support a claim for disability discrimination. [DN 5-1]. Defendant also argues that Plaintiff's retaliation claim must fail because Plaintiff did not engage in a protected activity. *Id.* Plaintiff has responded, and Defendant has replied. [DN 8; DN 9]. This matter is therefore fully briefed and ripe for review.

## II.     LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, the Court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1993)). The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x. 369, 371 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Iqbal*, 556 U.S. at 679.

## III. ANALYSIS

### A. Plaintiff's Disability Discrimination Claims (Counts I and III)

The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Similarly, the KCRA makes it unlawful for an employer "[t]o fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment . . . because the person is a qualified individual with a disability." Kentucky Revised Statute ("KRS") § 344.040(1)(a). Because the language in the KCRA tracks the language in the ADA, the KCRA "should be interpreted consonant with [the ADA]." *Macy v. Hopkins Cnty. Bd. of Educ.*, 429 F.Supp.2d 888, 902 (W.D. Ky. 2006) (citations omitted); *see also Koch v. Thames Healthcare Group, LLC*, 855 F. App'x 254, 257–58 (6th Cir. 2021). As a result, the Court addresses Plaintiff's disability discrimination claims under the ADA and KCRA together.

A plaintiff alleging disability discrimination under the ADA and KCRA is not required "to expressly allege facts supporting a *prima facie* claim of disability discrimination in [his] initial pleading." *Jemmot v. McDonough*, No. 3:21-cv-00486, 2022 WL 120631, *4 (M.D. Tenn. Apr. 22, 2022) (citations omitted). However, a plaintiff may not rest his disability discrimination claim solely on conclusory allegations that the defendant violated the law. *Id.* (citation omitted).

Instead, he "must 'meet the plausibility pleading standard.'" *Id.* at (quoting *Krueger*, 674 F. App'x at 494). Under this pleading standard, the plaintiff must "demonstrate more than a 'sheer possibility'" that the defendant has acted unlawfully. *Id.* (quoting *Krueger*, 674 F. App'x at 493) (internal quotation marks omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679) (internal quotation marks omitted).

Further, for an ADA or KCRA disability discrimination claim to survive a motion to dismiss, the complaint "must, at a minimum, allege facts from which an inference can be drawn that [the plaintiff] was disabled under the [ADA's and KCRA's] definition." *Currie v. Cleveland Metro. Sch. Dist.*, No. 1:15 CV 262, 2015 WL 4080159, at *4 (N.D. Ohio July 6, 2015). The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of [the] individual," or "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). The KCRA's definition of "disability" largely tracks the ADA definition. *See* KRS § 344.010(4).

In his response brief, Plaintiff clarifies that he proceeds under the third prong of the ADA and KCRA definitions of "disability." [DN 8, p. 5]. Thus, he argues that he was disabled within the meaning of these statutes because he was "regarded as having such an impairment." 42 U.S.C. § 12102(1); KRS § 344.010(4). Prior to the 2008 Amendments to the ADA, "the Supreme Court interpreted the ADA to consider a person disabled under the third prong only if a covered entity mistakenly believed that the individual had a physical impairment that was substantially limiting, or mistakenly believed that an actual, nonlimiting impairment was substantially limiting." *Neely v. Benchmark Family Servs.*, 640 F. App'x 429, 435 (6th Cir.

5

2016) (citation omitted). However, after the 2008 Amendments, an individual is "regarded as having such an impairment" if he or she "establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). As a result, the regarded-as-disabled theory[1] now requires only that the employer "took a prohibited action based on a perceived impairment, regardless of whether the employer though the impairment was substantially limiting." *Neely*, 640 F. App'x at 435 (citation omitted).

Plaintiff's disability discrimination claim under the ADA proceeds under these post-2008 standards. However, Kentucky courts continue to apply pre-2008 ADA jurisprudence to KCRA disability discrimination claims. *See, e.g.*, *Koch v. Thames Healthcare Group, LLC*, 855 F. App'x 254, 258 (6th Cir. 2021) (citations omitted). The Court will therefore consider whether Plaintiff has sufficiently alleged a disability with respect to his ADA claim using the post-2008 standard before turning to his KCRA claim.

  1. **ADA Claim**

As noted above, the ADA was amended in 2008. After the 2008 Amendments, an individual is "regarded as having such an impairment" if the individual "establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Thus, to succeed on a regarded-as-disabled theory under the ADA, the plaintiff must show that the employer "took a prohibited action based

---

[1] This theory is sometimes referred to as "perceived disability discrimination." *Morris v. Mary Rutan Hosp.*, No. 2:18-cv-543, 2019 WL 1282284, at *2 (S.D. Ohio Mar. 9, 2019).

on a perceived impairment, regardless of whether the employer thought the impairment was substantially limiting." *Neely*, 640 F. App'x at 435 (citation omitted).

Importantly, however, "it is not enough that the employer is simply aware of a plaintiff's symptoms; rather the plaintiff must show that the employer regarded the individual as 'impaired' within the meaning of the ADA." *Id.* at 435–36 (citation omitted). For example, in *Morris v. Mary Rutan Hospital*, No. 2:18-cv-543, 2019 WL 1282284 (S.D. Ohio Mar. 19, 2019), the plaintiff, a surgeon, provided surgical services for the defendant, a hospital. *Id.* at *1. After one of his patients suffered an "adverse outcome," the hospital placed the plaintiff on a six-month probationary period and required him to submit to a physical exam and a neuropsychological evaluation before returning to surgery. *Id.* The plaintiff ultimately sued the hospital, alleging disability discrimination and retaliation in violation of the ADA. *Id.* In his complaint, he alleged that the hospital "took adverse action against him because . . . [it] perceived [him] to be disabled." *Id.* He alleged that the hospital "mistakenly believed [he] had a neuropsychological disorder," and as a result, they required him to undergo an evaluation, "without any explanation or reason provided." *Id.* And he specifically alleged that the hospital "regarded [him] as a disabled individual by mistakenly believing that [he] had a neuropsychological disorder that substantially limited his ability to work." *Id.* at *3.

The district court found that these allegations were insufficient. The court first acknowledged that the plaintiff "need not factually support the allegation that he was regarded as being substantially limited to state a regarded-as-disabled claim." *Id.* "However," the court explained, he "must still allege facts sufficient to raise a plausible inference that [the hospital] regarded him as having an impairment, even if the perceived impairment is not severe enough to substantially limit a major life activity." *Id.* Yet, the only relevant alleged fact was that the

7

hospital had required the plaintiff to undergo a neuropsychological evaluation. *Id.* The plaintiff insisted this was sufficient, arguing that the only reason the hospital would require him to undergo the evaluation would be to determine the extent of a perceived disability. *Id.* But the court, relying on Sixth Circuit precedent, noted that "an employer's request that an employee [] undergo a medical or psychological evaluation is not sufficient to establish that the employer regarded the employee as disabled." *Id.* (citing *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999); *Krueger*, 674 F. App'x 490, 494 (6th Cir. 2017)). Further, while an employer may perceive that an employee's health problems are negatively affecting the employee's job performance, such a perception "is not tantamount to regarding that employee as disabled." *Id.* (quoting *Sullivan*, 197 F.3d at 810) (internal quotation marks omitted). Because the plaintiff failed to allege any other facts to support the hospital's alleged perception of him as disabled, his perceived disability discrimination claims were dismissed. *Id.* at *4.

The present case presents similarly insufficient allegations. Plaintiff alleges in his Complaint that he "performed the essential functions of his job competently, but Defendant terminated him because it regarded him as disabled." [DN 1, ¶ 29]. He argues that this allegation is sufficient to survive the Motion to Dismiss. [DN 8, p. 5]. The Court disagrees. This allegation is a conclusory statement, and the Court is not obligated to assume the truth of such a statement. *See, e.g.*, *Krueger*, 674 F. App'x at 494. Instead, the statement must be supported by factual allegations from which one could plausibly infer that the Defendant regarded Plaintiff as having an impairment. *See id.*; *Morris*, 2019 WL 1282284, at *3. Here, Plaintiff alleges only that a Human Resources agent told him "that he needed to contact the Defendant's Employee Assistance Plan because the company believed he was mentally unwell and needed help." [DN 1, ¶ 20]. But even assuming Defendant believed Plaintiff was "mentally unwell and needed help,"

8

there is no allegation from which one could infer that Defendant believed Plaintiff was mentally *disabled*. Stated another way, Defendant's alleged "perception that health problems [were] adversely affecting [Plaintiff's] job performance is not tantamount to regarding [him] as disabled." *Morris*, 2019 WL 1282284, at *3 (quoting *Sullivan*, 197 F.3d at 810) (internal quotation marks omitted). Because Plaintiff has not alleged facts to support his allegation that Defendant perceived him to be disabled, his claim for perceived disability discrimination under the ADA fails.

### 2. KCRA Claim

As noted above, a plaintiff pursuing a pre-2008 ADA disability discrimination claim is considered disabled under a regarded-as theory "only if a covered entity mistakenly believed that the individual had a physical impairment that was substantially limiting, or mistakenly believed that an actual, nonlimiting impairment was substantially limiting." *Neely*, 640 F. App'x at 435 (citation omitted); *see also Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 594 (Ky. 2003). The plaintiff-employee must ultimately "demonstrate that an employer thought he was disabled, [. . . and] that the employer thought that his disability would prevent him from performing a broad class of jobs." *Shave*, 127 S.W.3d at 594 (quoting *Ross v. Campbell Soup Co.*, 237 F.3d 701, 709 (6th Cir. 2001)) (internal quotation marks omitted).

As the Court has already explained, Plaintiff fails to allege facts from which one could infer that Defendant regarded him as being disabled in any capacity. Accordingly, for the same reasons that his ADA disability discrimination claim fails, Plaintiff's KCRA disability claim also fails.

In sum, Plaintiff's disability discrimination claims under the ADA and KCRA (Counts I and III) must both be dismissed because Plaintiff has failed to sufficiently allege that he is a

qualified individual with a disability. The Court will therefore grant Defendant's Motion to Dismiss, [DN 5], with respect to Counts I and III.

### B. Plaintiff's Retaliation Claim (Count II)

The ADA prohibits a person from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Importantly, this provision is not "a catchall statute creating a cause of action for any workplace retaliation." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014). Rather, it "protects individuals only from retaliation for engaging in, or aiding another who engages in, activity covered by the ADA." *Id.* (citing 42 U.S.C. § 12203(a)). Thus, claims under the ADA for retaliation have failed when the protected activity at issue is the filing of a workers' compensation claim "because 'a workers' compensation claim is not something . . . covered by the ADA.'" *Id.* (quoting *Reynolds v. American National Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012)). Similarly, the ADA "does not protect an employee who participates in arbitration proceedings contesting employment decisions that do not involve any claims of discrimination." *Id.* (citations omitted).

In this case, Plaintiff alleges that he "complained about the harassment he suffered at the hands of a coworker, but received only additional abuse, suspension, and termination in response." [DN 1, ¶ 36]. Stated another way, he alleges that he was retaliated against for reporting his coworker, whom Plaintiff claims inappropriately touched him. Defendant argues that this is not a protected activity under the ADA. [DN 5-1, pp. 10–13]. In response, Plaintiff claims that he has sufficiently alleged a protected activity because he alleged in his Equal Employment Opportunity Commission ("EEOC") Charge that he was "a nerd and a gamer," and

10

as a result, his coworkers teased him. [DN 8, pp. 8–9]; *see* [DN 1-1 (Amended EEOC Charge)]. He acknowledges that this "typically would not rise to the level of an attack on a disability," but argues that, in this case, the teasing escalated to the point that a bisexual coworker touched him inappropriately. [DN 8, p. 9]. He reported that incident to management, which, he argues, led to his suspension and ultimate termination "because he was regarded as mentally ill to the point of being unfit to work for Defendant." *Id.* at 10.

The Court finds Plaintiff's argument is without merit. In his response brief, Plaintiff goes to great lengths to explain a connection between his "nerd" and "gamer" status and the alleged sexual harassment. *Id.* at 9–10. This connection is tenuous, at best, but nevertheless, Plaintiff goes a step further and argues that he was terminated for complaining about the sexual harassment *and* because Defendant regarded him as mentally unwell "to the point of being unfit to work for Defendant." There are simply no factual allegations in the Complaint to support this questionable theory. At most, the Complaint (which incorporates the EEOC Charge, [DN 1-1]), alleges that Plaintiff was viewed as a "nerd" and a "gamer," and as a result, his coworkers teased him. Then, one particular coworker touched him inappropriately. He reported this incident and shortly thereafter, he was suspended and ultimately terminated. There are no allegations from which one could infer that Plaintiff's nerdy gamer status was related to his alleged sexual harassment or his termination.

Further, even if such allegations were fully flushed out in the Complaint, they would not give rise to a claim of retaliation under the ADA. The ADA "protects individuals only from retaliation for engaging in, or aiding another who engages in, activity covered by the ADA." *Rorrer*, 743 F.3d at 1046 (citing 42 U.S.C. § 12203(a)). It is a discrimination statute, and it protects individuals who have been discriminated against *because of a disability*. *See id.* For

example, the ADA's retaliation provisions protect individuals who request accommodations related to their disabilities, but it does not protect individuals who request accommodations for other reasons (e.g., to homeschool a child). *Id.* (citations omitted). Here, Plaintiff alleges that his coworkers viewed him as a nerdy gamer, and he complained to his manager that a bisexual coworker touched him in a suggestive manner. For this activity to be protected by the ADA, it must be related to a disability. However, the Court is unaware of any precedent stating that one's status as a nerd or gamer qualifies as a disability under the ADA. And, while other laws may protect Plaintiff from workplace sexual harassment, his alleged status as a harassment victim is not a disability under the ADA, nor does he allege that the harassment resulted from his alleged perceived disability (i.e., mental illness). In fact, there are no factual allegations connecting his reporting of workplace sexual harassment to this alleged perceived disability. Thus, Plaintiff's reporting of workplace sexual harassment is not an activity covered by the ADA. As a result, Plaintiff's ADA retaliation claim fails. The Court will therefore grant Defendant's Motion to Dismiss with respect to Count II of Plaintiff's Complaint.

### 3. CONCLUSION

For the reasons set forth above, Defendant Bunzl Retail Services, LLC's Motion to Dismiss, [**DN 5**], is **GRANTED**. This matter is therefore **DISMISSED** and **STRICKEN** from the Court's active docket.

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

May 25, 2022

cc: Counsel of Record